UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | MAGISTRATE NO. 21-MJ-533 |
| : | |
| SAMUEL LAZAR, : | |
| : | |
| Defendant. : | |

## MOTION FOR DETENTION PENDING TRIAL

The United States of America, by and through its Attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Samuel Lazar, be detained pending trial, pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (g).

**I.    BACKGROUND**

**A.    Procedural Posture**

On July 26, 2021, defendant Samuel Lazar was arrested at his home in the Eastern District of Pennsylvania on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Zia M. Faruqui in connection with a Criminal Complaint charging the defendant with Assaulting, Resisting, or Impeding Certain Officers as a Felony, in violation of 18 U.S.C. § 111(a) and (b), Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a)(1), and Engaging in Acts of Physical Violence in any Restricted Buildings or Grounds, in violation of 18 U.S.C. § 1752(a)(4).

The defendant was vocal and assaultive in his actions at the U.S. Capitol on January 6, 2021, repeatedly approaching law enforcement, swearing at and mocking them until finally discharging a chemical irritant at law enforcement. The defendant then bragged about doing so in a recording, saying, "Fuck the tyrants. There's a time for peace and there's a time for war."

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented orally, be considered in the Court's determination regarding pre-trial detention.

### B.     Factual Background

####     *i.     Background on January 6, 2021*

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol.

As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

        *ii.*     *The defendant's attire on January 6, 2021.*

FBI Harrisburg conducted open source research on the defendant and viewed videos of the defendant outside the Capitol on January 6, 2021. He was dressed in a camouflaged tactical vest, black hooded sweatshirt, and blue jeans. On his tactical vest was a patch that read, "Blessed

be the Lord, my rock, who trains my hands for war, and my fingers for battle." At times, the defendant wore green ski goggles to protect his eyes from chemical irritants deployed by law enforcement, as depicted in *Figure One* below:



*Figure One*

The defendant had his face painted in a camouflaged design and carried a radio on his tactical vest, as depicted in *Figure Two* below:



*Figure Two*

At times, the defendant also carried a red and white bullhorn, as depicted in *Figure Three* below:



*Figure Three*

A posting to the defendant's Facebook profile shows the defendant in the same distinctive clothing he wore at the Capitol on January 6, as depicted in *Figure Four* below:



*Figure Four*

5

       iii.  *The defendant's interactions with law enforcement on January 6, 2021.*

Open source video depicts the defendant approach the police barricade line on the West Front of the U.S. Capitol where he aimed a cannister resembling one that holds a chemical irritant in the direction of U.S. Capitol Police and D.C. Metro Police, who were assisting the U.S. Capitol Police at the time, as depicted in *Figure Five* below:



*Figure Five*

A second open source video depicts the defendant again approach the police barricade line on the West Front where he deployed an orange chemical irritant in front of U.S. Capitol Police Officers and D.C. Metro Police Officers, as depicted in *Figure Six* below:



*Figure Six*

Footage from the body-worn camera of the D.C. Metro Police Officer in front of the defendant in *Figure Six* ("Officer-1") shows that at approximately 1:13 p.m., the defendant walked along the police line, grabbed the bike rack and pulled it with his left hand in an attempt to remove it, while discharging the chemical irritant from a canister in his right hand, as depicted in *Figure Seven* below:



*Figure Seven*

As shown on Officer-1's body worn camera, the defendant was told to "get back" and police deployed a chemical irritant causing the defendant to retreat down the steps. The defendant then turned to face Officer-1 and redeployed his chemical irritant toward Officer-1 and a U.S. Capitol Police Officer ("Officer-2") a second time, causing an officer to lose the ability to see, as depicted in *Figure Eight* below:



*Figure Eight*

As viewed on body-worn camera, at approximately 1:41 pm on January 6, 2021, the defendant again approached the line of police officers on the West Front with his bullhorn and

8

displayed his middle finger to them. Then, the defendant yelled "forward!" to the hundreds of other rioters while signaling them to charge the police, as depicted in *Figure Nine* below:



*Figure Nine*

The defendant then yelled to police through his bullhorn "stand the fuck down, LEO's[1]. Stand the fuck down" while also telling them to "get the fuck out of the way, tyrants!" The defendant offered for the police to "join" him and when none did, the defendant declared to the police, "you now have fucking enemies on both sides!" The defendant again took out his cannister of chemical irritant and held it.

In a recently released *New York Times* video of the assault on the Capitol, the defendant is captured yelling through his bullhorn to other rioters, "Let's get their guns! Let's get their guns!" encouraging others to forcefully take law enforcement's weapons from them, as depicted in *Figure Ten* below:

---

[1] LEO is short for "law enforcement officer."

9



*Figure Ten*

    iv.     *The defendant bragging about his assault.*

Another open source video shows the defendant, purportedly at 4:30 p.m., as depicted in *Figure Eleven* below:



*Figure Eleven*

In this video, the defendant stated, "They maced us, those tyrannical pieces of shit, and we maced them right the fuck back and now they're taking the building." In the video, the defendant continued, "They attacked the people. We have a right to defend ourselves. Fuck the tyrants. There's a time for peace and there's a time for war" while pointing to the above-referenced patch

10

on his chest. The defendant answered a question from someone nearby by stating, "I was right at the front, on the tip of the spear, brother. That's where you gotta be."

## II.     ARGUMENT

### A.     Applicable statutory authority

18 U.S.C. § 3142(f)(1) advises that the Court "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community … in a case that involves … (A) a crime of violence…for which a maximum term of imprisonment of 10 years or more is prescribed."

"Crime of violence" is defined in 18 U.S.C. § 3156(a)(4) in part as "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another or (B) any other offense that is a felony and that, by its nature, involves substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a) and (b) is such an offense.  Accordingly, the defendant should be detained pending such a detention hearing.

Under 18 U.S.C. § 3142(g), the judicial officer shall similarly consider whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community – an inquiry that considers (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) his history and characteristics, and (4) the nature and seriousness of the danger posed by his release.

The United States seeks detention because no combination of conditions will assure that the defendant will not pose a danger to the safety of the community.

**B.     The factors under 18 U.S.C. § 3142(g) weigh in favor of detention.**

The government proffers the information contained below in support of establishing the requisite clear and convincing evidence requiring the defendant's detention.

*i.     The Nature and Circumstances of the Offense*

The defendant's crimes are serious and cannot be viewed in isolation—he was one of thousands of individuals who descended upon the Capitol on January 6 to obstruct a cornerstone process of our democracy. The defendant wasn't just a part of the crowd or someone who got caught up in the moment. He travelled to Washington, D.C. with, and donned, a tactical vest and painted his face in a camouflage design.  He wore a patch declaring his hands were trained for war and his fingers were trained for battle.  He was at the front of the crowd that breached police lines on the West Front, repeatedly approaching the line to verbally taunt officers, to pull on the barriers and to encourage others to charge police and take their weapons.  He stood in front of police and aimed a chemical irritant at them, but he did not stop with words or with merely menacing police.  He attacked the line of police officers with a chemical irritant.

The Chief Judge has outlined specific offense characteristics that serve as guideposts relevant to assessing the comparative culpability of each defendant in relation to the other rioters. *United States v. Chrestman*, No. 21-MJ-218 (ZMF), 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021). Almost all of the *Chrestman* factors put the defendant in a more serious category and demonstrate his dangerousness. First, he has been charged with a felony. Second, he engaged in prior planning before arriving at the Capitol. As his attire shows, the defendant came to Washington, D.C. with the intention of participating in "war" and "battle" and he did so dress. Media reports say on the morning of January 6, 2021, the defendant posted a video in which he said, "It's going to be an eventful day.  Donald Trump is going to shock the world!  We're ready

12

for war if we're needed."[2]   When given the opportunity, he attacked officers in furtherance of that goal.  As the Court said in *Chrestman,* "[t]hese motives and steps taken in anticipation of an attack on Congress speak volumes to both the gravity of the charged offense, as a premeditated component of an attempt to halt the operation of our democratic process, and the danger a defendant poses not just to the community in which he resides, but to the American public as a whole."  *Id.* at *8.

Third, the defendant encouraged others' misconduct. Through use of a bullhorn, he encouraged hundreds of others to charge the police line and take law enforcement's weapons and accordingly, may have inspired further criminal conduct on the part of others. Fourth, his words and movements demonstrated a dangerous hostility to law enforcement. The Court noted in *Chrestman*, "[g]rave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement…". *Id.*  The defendant repeatedly confronted police with words, menacing behavior and an assault.

The only *Chrestman* factor that may weigh in the defendant's favor is that there is no evidence he coordinated with others beyond the people with whom he went to the Capitol, although it is noteworthy that he had a two-way radio on his tactical vest. Otherwise, the nature and circumstances of his offenses therefore weigh in favor of detention.

### ii. The Weight of the Evidence Against the Defendant

The weight of the evidence weighs in favor of detention. He is on body-worn camera spraying a chemical irritant at police officers and yelling at officers. The clothes he is wearing while he assaults officers matches his clothing in a social media post.  Multiple witnesses

---

[2] Nephin, Dan.  "Ephrata man wanted by FBI in Capitol attack investigation, footage shows."  April 10, 2021.  Available at https://lancasteronline.com/news/local/ephrata-man-wanted-by-fbi-in-capitol-attack-investigation-footage-shows/article_b10587f4-998c-11eb-b115-e3e95ef1f1dd.html

recognized the defendant in the videos and/or photos, including the defendant's girlfriend, who identified him as the individual in each of the nine photos contained in the criminal complaint. The defendant bragged about assaulting the officers in a video taken hours later. Collectively, there is strong evidence of guilt and a conviction is likely.

### iii. The History and Characteristics of the Defendant

The defendant's criminal history consists of multiple prior misdemeanor convictions, including a 2004 conviction for criminal mischief for which he was sentenced to a time served sentence of 23 months in jail. In 2010, the defendant was denied his attempt to purchase a firearm. In 2016, he was convicted for lying on the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473 in an attempt to obtain a firearm again at a gun show. The defendant answered "no" to the question, "Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a short sentence including probation?" The defendant was again denied the purchase of the firearm when his criminal background was shown. According to the gun store owner, the defendant remarked that he "did not think his criminal history would follow him here." The defendant then hatched a plan with his brother for his brother to purchase the firearm, however, the gun store owner denied the sale, believing it would be a "straw purchase" by the defendant's brother.

When the light of his actions and words from January 6, 2021 are shown upon his repeated attempts to obtain a firearm and his 2016 conviction for lying to do so, a concerning threat of danger emerges.

### iv. The Nature and Seriousness of the Danger to any Person or the Community

The defendant's actions at the Capitol and his surrounding rhetoric alone make him a

serious risk of danger to the community. The D.C. Circuit has drawn a distinction between violent and non-violent participants in the Capitol riots, with the former being in a "different category of dangerousness." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir.), judgment entered, 844 F. App'x 373 (D.C. Cir. 2021) (emphasis added). In fact, the court in *Munchel* specifically named those who assaulted police officers as falling into the category of elevated dangerousness. *Id; see also United States v. Hale-Cusanelli,* 2021 WL 2816245, at *6 (D.D.C. July 7, 2021). (affirming detention order where District Court found Capitol riot defendant's "'conduct in this case made me concerned that he was perhaps looking to act on these violent tendencies and violent comments in the past'"). Other courts in this district have made the same observation. "Indeed, if any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-gear-clad police officer does." *United States v. Fairlamb*, No. 1:21-CR-120-RCL, 2021 WL 1614821, at *5 (D.D.C. Apr. 26, 2021). Accordingly, the defendant's release poses a danger to the community and this factor weighs in favor of detention.

### III.   CONCLUSION

For the reasons explained here, the United States respectfully requests the Court grant the government's motion to detain the defendant pending trial.

                Respectfully submitted,

                CHANNING D. PHILLIPS
                ACTING UNITED STATES ATTORNEY

                */s/Douglas G. Collyer*
                Douglas G. Collyer
                Assistant United States Attorney
                District of Columbia Detailee
                N.D.N.Y. Bar 519096
                U.S. Attorney's Office
                14 Durkee Street, Suite 340
                Plattsburgh, NY 12901
                (518) 314-7800
                Douglas.Collyer@usdoj.gov

Date: August 5, 2021

Case 1:21-mj-00533-ZMF   Document 6   Filed 08/05/21   Page 16 of 16